Argued 21 October, decided 16 November, 1903.

## LA VIE *v.* TOOZE.

[74 Pac. 210.]

CONSTRUCTION OF EXECUTORY CONTRACT OF SALE—PASSING TITLE.

1. Title does not pass to an unsegregated number or quantity of chattels, as, a stated number of pounds of hops out of a certain crop, by a contract for their sale *in futuro*, in the absence of a special provision to that effect.

COMPETENCY OF EVIDENCE OF DELIVERY UNDER EXECUTORY CONTRACT.

2. Where replevin is brought for property contracted for delivery when it shall come into existence, it may be shown that the property was actually delivered in pursuance of the contract, as thereby the buyer perfected his title.

PAROL EVIDENCE TO IDENTIFY PERSON MEANT BY WRITING.

3. Where a power of attorney appoints C. K. and —— K., said C. K. and —— K., composing the firm of K. Bros., and doing.business in the name of K. Bros., as the grantor's lawful attorneys, etc., parol evidence is admissible to supply the Christian name of the person whose Christian name was left blank, it not tending to enlarge or alter the writing, but rather to identify a person referred to therein.

From Marion: GEORGE H. BURNETT, Judge.

This is an action by Geo. La Vie against Walter L. Tooze

to recover the possession of 40 bales of hops, or $1,662.12, the value thereof, in case delivery could not be had, and $300 for the alleged wrongful detention thereof. The answer denies the material allegations of the complaint, and avers that the hops are of the value of $2,000, and, for a further defense, alleges, in substance, that at all the times mentioned in the complaint the defendant was the owner of the hops, and in the rightful possession thereof until November 3, 1902, when they were wrongfully taken from him by the plaintiff, to his damage in the sum of $100. For a second defense it is stated, in substance: That on January 16, 1902, plaintiff and one J. R. Kaser entered into an executory contract for the sale of 8,000 pounds of hops to be grown by the latter in Marion County during that year; a copy of the agreement being attached to, and made a part of, the answer; that in pursuance of such contract, plaintiff, at the time it was entered into, advanced to Kaser $1.00, and thereafter various other sums, amounting, with interest, on October 31, 1902, to $490.50, which sum on that date Kaser tendered to plaintiff, who refused to accept the same, or any part thereof, and was thereafter deposited in court for him with the answer; that the hops mentioned in the complaint are the identical hops specified in the contract, and plaintiff's only claim or title thereto is by virtue of the executory agreement; that, after the execution of the contract, Kaser cultivated, harvested, baled, and retained the hops in his possession until about November 1, 1902, when he sold and transferred them to the defendant; that Kaser performed all the terms of the agreement upon his part, but plaintiff refused to comply with the stipulations thereof assumed by him. A supplemental answer was filed, alleging that, since the filing of his answer, plaintiff wrongfully secured the possession of and unlawfully removed the hops from the state, and converted them to his own use, to the defendant's damage in the sum of $2,000. Re-

plies having put in issue the allegations of new matter in
the original and supplemental answers, a trial was had,
resulting in a judgment that defendant was the owner and
entitled to the immediate return and possession of the
hops, or to recover $1,800, the value thereof, and the sum
of $32.60 as damages, from which judgment plaintiff ap-
peals.                                                    REVERSED.

For appellant there was a brief over the names of *Car-
son & Adams, Peter H. D'Arcy*, and *John M. Gearin*, with an
oral argument by *Mr. D'Arcy* and *Mr. Loring K. Adams*.

For respondent there was a brief over the names of
*Hiram Overton, L. J. Adams*, and *Geo. G. Bingham*, with an
oral argument by *Mr. Overton* and *Mr. Bingham*.

MR. CHIEF JUSTICE MOORE, after stating the facts as
above, delivered the opinion of the court.

Counsel for plaintiff offered in evidence a power of at-
torney executed by him August 13, 1902, the material part
of which is as follows :

"Know all men by these presents that I, George A. La
Vie, of the State, County and City of New York, have made,
constituted and appointed, and by these presents do make,
constitute and appoint, Conrad Krebs and —— Krebs, of
the City of Salem, in the State of Oregon, said Conrad
Krebs and —— Krebs composing the firm of Krebs Broth-
ers, and doing business under the name of Krebs Brothers,
my due and lawful attorneys for me and in my name, place
and stead, to institute and carry on all legal proceedings
necessary to compel the performance of the written con-
tracts entered into by the said George A. La Vie in the
State of Oregon for the purchase or consignment of hops,
* * to receive any and all of the said hops when delivered."

An objection to this instrument on the ground that it
was immaterial and irrelevant, and that it therefrom ap-
peared that Conrad Krebs only was appointed agent, hav-
ing been sustained, an exception was saved. M. W. Krebs
appearing as plaintiff's witness, the following questions

were propounded to him : "Are you a member of the part-
nership of Krebs Bros.?" "I will ask you, Mr. Krebs, who,
on the 16th day of January, 1902, in this county, consti-
tuted the firm of Krebs Bros.?" "I will ask you, Mr. Krebs,
what you did with Mr. Kaser, on the 25th day of October,
1902, with respect to the delivery of the hops mentioned
in the pleadings in this case to La Vie by you, as La Vie's
agent?" Plaintiff's counsel here said to the court: "We
want to show an actual delivery of the hops." "I will ask
you, Mr. Krebs, if you know who was the agent of La Vie
in Marion County at that time — on October 25, 1902."
Objections to these questions on the ground that they were
immaterial and incompetent having been sustained, plain-
tiff's counsel stated to the court: "One thing I overlooked,
and that is, I want to prove by this witness that he was a
member of the firm of Krebs Bros., and that the firm was
constituted of Conrad Krebs, Leonard Krebs, and M. W.
Krebs." It is contended by plaintiff's counsel that the
court erred in excluding the power of attorney and in not
permitting the witness to answer the questions above
quoted.

1. The contract entered into for the sale of the hops was
executory, requiring Kaser to care for, cultivate, and har-
vest the crop; thus showing that no title or right of pos-
session passed by the instrument, and thereby precluding
the maintenance of an action to recover possession of the
property: *Backhaus* v. *Buells*, 43 Or. 558 (73 Pac. 342).

2. In this state of the case, the power of attorney was
immaterial, unless there was a voluntary delivery of the
hops to plaintiff's duly constituted agent. It will be re-
membered that the witness was asked what he, as plain-
tiff's agent, did October 25, 1902, with reference to the
delivery of the hops; and, an objection to the question
having been sustained, plaintiff's counsel stated to the

*43 Or.—38*

court: "We want to show an actual delivery of the hops."
It is fairly inferable from the question and the statement
quoted that Kaser delivered the hops to the witness, and,
if the latter was plaintiff's agent, the executory contract.
became executed, and the right of possession of the prop-
erty passed by such act; and, if it was thereafter taken by
any person from the plaintiff without his consent, this
action could be maintained to recover its possession.

3. It will also be remembered that plaintiff's counsel
stated that he wanted to prove by the witness that he was
a member of the firm of Krebs Bros., which consisted of
Conrad Krebs, Leonard Krebs, and M. W. Krebs; and
this presents the question whether or not oral testimony
was admissible to show that any other than Conrad Krebs,
who is named in the power of attorney, was by that instru-
ment appointed plaintiff's agent. In *Price* v. *Page*, 4 Ves.
Jr. 679, a legacy having been bequeathed to —— Price,
the son of —— Price, it was held that testimony was ad-
missible to show the Christian name of, and to prove the
identity of, the legatee. In *Herring* v. *Boston Iron Co.* 1
Gray, 134, a written agreement having been entered into
whereby the plaintiff agreed to slate a building to be erected
in South Boston "by Horace Gray, Esq., and others," it
was held that extrinsic evidence was admissible to show
who were designated by the words "and others" in the
written agreement, Mr. Justice Thomas saying: "To as-
certain who are the parties, resort must be had, in the
first instance, to the written instrument. If this fail to
designate them, or either of them, resort must be had to
extrinsic evidence to supply the want." In *Wadsworth* v.
*Allen*, 8 Grat. 174 (56 Am. Dec. 137), in an action on a
letter of credit addressed to Wadsworth and Williams, it
was held that testimony was admissible to prove that the
letter was intended for Wadsworth, Williams & Co., so as
to hold the writer bound to the latter thereon. In *Leach*

v. *Dodson*, 64 Tex. 185, a grant of real property having been made to —— Hale, it was held that testimony was admissible to prove the Christian name. In *Holmes* v. *Moon*, 7 Heisk. 506, a deed having been executed to Jarrett Moon & Co., it not appearing whether the firm was composed of Jarrett and Moon and others, or Jarrett Moon (one person) and others, it was held that the uncertainty arising from the omission of the Christian names of the grantors might be removed by parol proof. The rule is well settled in this state that parol evidence is admissible to explain an ambiguity, to identify property, and to apply an instrument to the subject-matter to which it relates: B. & C. Comp. § 704; *Jones* v. *Dove*, 6 Or. 188; *Boehreinger* v. *Creighton*, 10 Or. 42; *House* v. *Jackson*, 24 Or. 89 (32 Pac. 1027); *Sommer* v. *Island Merc. Co.* 24 Or. 214 (33 Pac. 559); *Reinstein* v. *Roberts*, 34 Or. 87 (55 Pac. 90, 75 Am. St. Rep. 564). The testimony rejected by the court did not, in our opinion, tend to enlarge the power of attorney, but was calculated to show who were intended by the designation " Krebs Brothers," and for that purpose was admissible, as was also the testimony which might have disclosed that the hops had been voluntarily delivered by Kaser to plaintiff's agent. For the error committed in excluding such testimony, the judgment is reversed, and a new trial ordered.　　　　　　　　　　　　　　　Reversed.

Decided 1 February, rehearing denied 2 March, 1904.